LUTHER L. SHORT *vs.* DAVID WOODWARD & others.

An agreement to take a certain annual compensation for damages occasioned by flowing land by a milldam is not an agreement for the sale of an interest in lands, within the statute of frauds.

The owner of a mill, under an agreement authorizing him to "keep his dam to the jury mark, and no higher," may vary, repair or use his dam as he pleases, if he raises no part of the dam higher than that mark.

An agreement to take a certain annual compensation for the flowing of land by a milldam, "if the owner of the mill would keep his dam to the jury mark, and no higher," cannot be considered as terminated by such owner's raising the water and the dam, by the addition of flashboards, above the mark for two seasons, if the owner of the land flowed gives receipts in full for his damages at the rate agreed upon during those years and afterwards, without giving any notice that he considers the agreement terminated.

The terms of an oral contract, when clearly proved, and intelligible and explicit, are to be construed by the court, and not by the jury.

HOAR, J. As a defence to a complaint for flowing the complainant's land by a milldam, the respondents relied upon an oral agreement to take the sum of five dollars a year, payable once in two years, so long as the dam should be kept at a certain height, for a summer pond, in full satisfaction of damages. The verdict being for the respondents in the court of common pleas, the complainant takes exceptions.

1. The exception, that the agreement was a contract for the sale of lands, or of an interest in or concerning them, and so invalid under the statute of frauds, cannot be supported. The interest in the lands is conferred by the statute; the contract only fixes the amount to be received in satisfaction of a pecu-

niary claim. The precise point was decided in *Smith* v. *Goulding*, 6 Cush. 154.

2. The contract being that "if the respondents would keep their dam to the jury mark, and no higher, the complainant would take five dollars a year," the complainant offered evidence that the respondents, by shortening their waste way, had prevented so free a passage of the water as before, and thus raised the water above the height of the mark fixed by the jury. We think this evidence was rightly excluded. Where, by prescription or grant, the right to maintain a particular dam has been acquired, this court has held that the right to tighten and repair such dam was included, although the consequence might be a greater flowing of the lands above. *Cowell* v. *Thayer*, 5 Met. 258. But in this case the agreement was explicit, and established the compensation for flowing caused by keeping the dam at a height not above the jury mark. We do not perceive that the existing height of the dam has anything to do with the interpretation of this contract. If the whole dam had been, at the time the bargain was made, two feet below the jury mark, the respondents might certainly have raised it. They were not confined to a dam of any particular construction, but might vary, repair or use the dam according to their pleasure, and pay but five dollars a year to the plaintiff, if no part of the dam exceeded the height agreed on.

3. The complainant offered to show that during the years 1852 and 1853, times not covered by the complaint, the respondents had used flashboards on their dam, and by that means raised their dam, and the water, above the jury mark. This evidence was rejected, and we think if it had stood alone its rejection would have been erroneous, and a ground for a new trial. The contract was by its terms to continue only so long as the respondents kept their dam no higher than the jury mark.

But it further appeared that up to December 1854 the defendants had biennially paid to the plaintiff, and the plaintiff had given his receipts in full for flowing at the rate of five dollars a year. There was no offer to show that the plaintiff had given any notice that he considered the contract terminated, or wa⸗

proceeding upon any other basis than the contract. We think this was a waiver of his right to avail himself of the respondents' violation of the contract, and a recognition of it as subsisting and obligatory upon the parties, after the flashboards had been erected and removed.

4. The complainant contended " that the true meaning and construction of the contract between the parties was not that the respondents might keep the dam to the jury mark, but that they were to keep the pond or water to the jury mark ; that the construction of the contract was a question of fact for the jury, and that he had a right to argue to them from the acts and declarations of the parties that they so understood the contract."

But the complainant himself testified to the terms of the contract, and there was no evidence to the contrary. These terms were intelligible and explicit, and there was nothing ambiguous or uncertain either in the language or the subject matter to which it applied. In such a case, the interpretation and construction of the contract, that is to say, the determination of the legal rights and liabilities which it creates between the parties, was rightly held to be for the court, and not for the jury. *Wilmarth v. Knight,* 7 Gray, 294.                    *Exceptions overruled*

*E. H. Bennett,* for the complainant.

*C. I. Reed,* for the respondents.